## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| ALLEN C. IROEGBULEM, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | No. 18 CV 8422 |
| v. | ) | |
| | ) | Judge Thomas M. Durkin |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM OPINION AND ORDER

Allen C. Iroegbulem, who plead guilty to sex trafficking of a minor in violation of the Victims of Trafficking and Violence Protection Act of 2000 ("Sex Trafficking Act"), 18 U.S.C. § 1591, and was sentenced to 240 months' imprisonment and 5 years of supervised release, filed a *pro se* petition for relief under 28 U.S.C § 2255, arguing that his counsel was ineffective for failing to object to his allegedly erroneous criminal history calculation and failing to argue against the application of a United States Sentencing Guidelines ("Sentencing Guidelines") sentencing enhancement. R. 3. With the Court's permission, Mr. Iroegbulem later filed a supplement to his petition arguing that counsel was also ineffective for failing to challenge 18 U.S.C. § 1591(a) as unconstitutionally vague and his indictment as duplicitous. R. 11. For the following reasons, the Court denies both the original and supplemental petitions.

## BACKGROUND

### I. Underlying Facts and Proceedings

*Facts and Charges.* In March 2015, Mr. Iroegbulem was charged in a three-count indictment under 18 U.S.C. §§ 1591(a)(1), (b)(1) and (b)(2) in connection with sex trafficking three girls he knew were underage—Minors A, B, and C—to adult men in exchange for money he retained for himself. The Government contends that he gave his minor victims a steady supply of drugs and alcohol, and that the girls were raped and injured, frequently while unconscious. Eleven days before trial, Mr. Iroegbulem plead guilty to Count Two in exchange for the Government moving to dismiss the other two counts. 15 CR 52-1, R. 68. Count Two charges as follows:

> Beginning in or about December 2013, and continuing until in or about February 2014, . . . [Mr. Iroegbulem], in and affecting interstate commerce, knowingly recruited, enticed, harbored, transported, provided, obtained, and maintained by any means . . . Minor B, *and* benefitted financially and by receiving anything of value from participation in a venture which has engaged in recruiting, enticing, harboring, transporting, providing, obtaining, and maintaining by any means Minor B, knowing and in reckless disregard of the fact that Minor B had not attained the age of 18 years and would be caused to engage in a commercial sex act; In violation of Title 18, United States Code, Section 1591(a) and (b)(2).

*Id.*, R. 24 at 2 (emphasis added).

*Sentencing.* The plea agreement and presentence investigation report calculated Mr. Iroegbulem's guideline range at 360 months to life imprisonment. 15 CR 52-1, R. 72 at 34. The Government recommended a 360-month sentence, *Id.*, R. 113 at 50, while Mr. Iroegbulem's counsel argued that 120 months was reasonable.

*Id.*, R. 94. Ultimately this Court sentenced Mr. Iroegbulem to 240 months' imprisonment and 5 years' supervised release. *Id.*, R. 113 at 152.

## II.   Post-Trial Proceedings

*Appeal.* Mr. Iroegbulem filed a timely notice of appeal challenging his sentence and contending that the Sex Trafficking Act was unconstitutional because it was enacted without a quorum of Congress. His trial counsel moved to withdraw under *Anders v. California*, 386 U.S. 738 (1967), on the ground that Mr. Iroegbulem's appeal was frivolous. *See* 15 CR 52-1, R. 115. On March 23, 2018, the Seventh Circuit granted counsel's motion and dismissed the appeal because Mr. Iroegbulem's plea agreement included a broad appeal waiver and Mr. Iroegbulem did not seek to have his guilty plea set aside. *United States v. Iroegbulem*, 716 Fed. App'x 549, 550 (7th Cir. 2018). The Court also noted that the Sex Trafficking Act was properly enacted and binding. Mr. Iroegbulem did not file a petition for writ of certiorari.

*Section 2255 Petition.* Thereafter in December 2018, Mr. Iroegbulem filed a timely Section 2255 petition arguing that his trial counsel was ineffective for: (1) failing to object to his allegedly erroneous criminal history score; and (2) failing to argue against the simultaneous application of Sentencing Guidelines enhancements Section 4B1.5(b)(1) and Section 2G1.3(b)(4)(A). R. 3. Mr. Iroegbulem filed a supplement to his Section 2255 petition with the Court's permission on August 30, 2019, arguing that counsel also was ineffective for failing to challenge 18 U.S.C. § 1591(a) as unconstitutionally vague and his indictment as duplicitous. R. 11. The Government argues that the Court should deny Mr. Iroegbulem's petitions because:

3

1) he waived his right to collaterally attack his conviction and sentence; 2) his supplemental petition is time-barred; and 3) his claims fail on the merits in any case. R. 6; R. 15.

## STANDARD

Section 2255 allows "a prisoner under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . [to] move the court which imposed the sentence to vacate, set aside, or correct the sentence." 28 U.S.C. § 2255(a). A criminal defendant is entitled to relief from his conviction and sentence if "the court finds . . . that there has been a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." *Id.* § 2255(b). Section 2255 relief is reserved for "extraordinary situations, such as an error of constitutional or jurisdictional magnitude or where a fundamental defect has occurred which results in a complete miscarriage of justice." *Blake v. United States*, 723 F.3d 870, 878-79 (7th Cir. 2013).

## ANALYSIS

The Court first addresses the Government's waiver argument, before turning to the claims raised in each of Mr. Iroegbulem's petitions, and ultimately examining whether an evidentiary hearing or certificate of appealability is warranted.

## I. Waiver

The Government contends that Mr. Iroegbulem waived the claims in his original and supplemental petitions via his plea agreement. A defendant may validly

waive both his right to a direct appeal and his right to collateral review under Section 2255 as a part of his plea agreement. *Jones v. United* States, 167 F.3d 1142, 1144-45 (7th Cir. 1999). These waivers are generally upheld in accordance with their terms, with limited exceptions for cases in which the plea agreement was involuntary, the district court relied on a constitutionally impermissible factor (such as race), the sentence exceeded the statutory maximum, or the defendant claims "ineffective assistance of counsel in connection with the negotiation of [the plea] agreement.'" *Keller v. United States*, 657 F.3d 675, 681 (7th Cir. 2011).

> Mr. Iroegbulem's plea agreement states in relevant part that:
>
> [Mr. Iroegbulem] . . . waives the right to challenge his conviction and sentence, and the manner in which the sentence was determined, and (in any case in which the term of imprisonment and fine are within the maximums provided by statute) his attorney's alleged failure or refusal to file a notice of appeal, in any collateral attack or future challenge, including but not limited to a motion brought under . . . Section 2255. This waiver does not apply to a claim of . . . ineffective assistance of counsel, which relates directly to this [plea] agreement or to its negotiation.

15 CR 52-1, R. 68 at 14. Mr. Iroegbulem's ineffective assistance claims are thus foreclosed by this waiver and Seventh Circuit precedent unless they "relate directly to" his plea agreement or "its negotiation." *Id.*; *Rickett v. United States*, 2011 WL 760004, *1, 3 (N.D. Ill. Feb. 25, 2011) (construing a virtually identical waiver and concluding "the only claim [the defendant] can bring in her Section 2255 motion concerning her counsel's ineffectiveness must pertain to her attorney's conduct in negotiating her waiver."). The Government does not meaningfully address how Mr. Iroegbulem's waiver applies to his various claims, which as discussed concern

whether his counsel was ineffective for failing to object to certain sentencing calculations (each of which was set forth in his plea agreement), or to the Sex Trafficking Act or indictment as unconstitutionally vague and/or duplicitous. And Mr. Iroegbulem does not address the waiver argument at all. But as explained *infra*, Mr. Iroegbulem's claims fail even if each could properly be characterized as a challenge to the negotiation of his plea agreement, and thus side-step the waiver.

## II.  Original Petition

As stated, Mr. Iroegbulem's original Section 2255 petition contends that his counsel was ineffective for failing to object to the allegedly erroneous calculation of his criminal history points, and the simultaneous application of two Sentencing Guidelines enhancements. Section 2255 relief is generally not available for sentencing errors, especially when such errors could have been raised on direct appeal. *Narvaez v. United States*, 674 F.3d 621, 627 (7th Cir. 2011). But sentencing errors couched in terms of ineffective assistance of counsel are cognizable to the extent they satisfy the standards set forth in *Strickland v. Washington*, 466 U.S. 668 (1994). Those standards are exacting. To succeed on such a claim, the petitioner must show that: (1) counsel provided representation that "fell below an objective standard of reasonableness" (performance prong); and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different" (prejudice prong). 466 U.S. at 688, 694. The performance prong is "'highly deferential' to counsel, presuming reasonable judgment and declining to second guess strategic choices." *United States v. Williams*, 106 F.3d 1362, 1367 (7th

Cir. 1997). And if a petitioner cannot establish one of the *Strickland* prongs, the Court need not consider the other. *Groves v. United States*, 755 F.3d 588, 591 (7th Cir. 2014). The Court examines Mr. Iroegbulem's claims under this standard below.

**A.      Criminal History Score Calculation**

Mr. Iroegbulem first contends that his counsel was ineffective for failing to object to the calculation of 16 criminal history points, and that he should have been assessed just 7, because: (1) certain convictions that did not result in imprisonment should not have been counted; and (2) certain other sentences for which he was imprisoned should have been considered together.

***Convictions without imprisonment.*** Mr. Iroegbulem argues that he should not have received a criminal history point for each of his May 31, 2012, January 25, 2013, and June 6, 2013 convictions for possession of cannabis, because he was not imprisoned for any of them.[1] R. 3 at 2. But convictions resulting in sentences that do not include imprisonment are not excluded from the criminal history calculation, and Mr. Iroegbulem's convictions were correctly accounted for under Sentencing Guidelines Section 4A1.1. Indeed, that section directs courts to:

(a)      Add 3 points for each prior sentence of imprisonment exceeding one year and one month.

(b)      Add 2 points for each prior sentence of imprisonment of at least sixty days not counted in (a).

(c)      Add 1 point for each prior sentence not counted in (a) or (b), up to a total of 4 points for this subsection.

---

[1] For his May 31 conviction, he was sentenced to a fine. For his January 25 and June 6 convictions, he was sentenced to supervision. 15 CR 52-1, R. 68 at 7.

USSG § 4A1.1(a)-(c). Section 4A1.1(c) therefore requires of the Court exactly what it did. That is, to add one criminal history point for each of the three convictions at issue. Accordingly, Mr. Iroegbulum suffered no prejudice and his ineffective assistance claim based on these calculations fails.

**Separate prior sentences of imprisonment.** Mr. Iroegbulem also claims his counsel was ineffective for failing to argue that certain prior convictions for which he was imprisoned "ran concurrent" with one another and should have been considered as a single sentence, resulting in fewer criminal history points. Those convictions and sentences are: 1) 180 days' imprisonment on April 26, 2013 for theft; 2) one-year imprisonment on September 4, 2013 for unlawful possession of a credit card; 3) 200 days' imprisonment on August 8, 2014 for obstruction of justice; and 4) 3 years' imprisonment on August 21, 2014 for aggravated criminal sexual abuse of a minor. R. 3 at 3; 15 CR 52-1, R. 68 at 8. Mr. Iroegbulem received two criminal history points for the first three such offenses under Section 4A1.1(b), and three for the fourth pursuant to Section 4A1.1(a). The Sentencing Guidelines provide the following regarding prior sentences:

> Prior sentences always are counted separately if the sentences were imposed for offenses that were separated by an intervening arrest (*i.e.*, the defendant is arrested for the first offense prior to committing the second offense). If there is no intervening arrest, prior sentences are counted separately unless (A) the sentences resulted from offenses contained in the same charging instrument; or (B) the sentences were imposed on the same day.

USSG § 4A1.2(a)(2).

8

Both the presentence report and Mr. Iroegbulem's plea agreement reflect that the sentences at issue were imposed "based on charges contained in separate charging instruments" and not on the same day. R. 6 at 7; *see also* 15 CR 52-1, R. 72 at 67-68 (presentence investigation report); *id.*, R. 68 at 8 (plea agreement). The Court thus correctly treated them as separate sentences under Section 4A1.2(a)(2), and properly calculated the points under Section 4A1.1. Neither *Strickland* prong is met, so counsel was not ineffective on this basis either.[2]

### B.    USSG Sections 4B1.5(b)(1) and 2G1.3(b)(4)(A) Enhancements

Mr. Iroegbulem also contends that his counsel was ineffective for failing to object to the five-level enhancement he received under Sentencing Guidelines Section 4B1.5(b)(1) for repeat and dangerous sex acts against minors and the two-level enhancement that he received under Section 2G1.3(b) for the commission of a sex act with a minor. More specifically, he contends that the Section 4B1.5(b)(1) enhancement could not apply to his 18 U.S.C. § 1591(a) conviction, and that the two enhancements involved the same course of conduct, resulting in impermissible double counting, R. 3 at 5. The Court addresses each in turn.

***18 U.S.C. § 1591(a) conviction as a "covered sex crime" under Section 4B1.5(b)(1).*** Sentencing Guidelines Section 4B1.5(b)(1) applies a five-level sentencing enhancement when the defendant's offense "is a covered sex crime" and "the defendant engaged in a pattern of activity involving prohibited sexual conduct."

---

[2] Even if the Court accepted Mr. Iroegbulem's argument that he had only 7 criminal history points as a Category IV offender, his 240-month sentence is still 52 months below the bottom end of the 292 to 365-month guideline range.

USSG § 4B1.5(b)(1). Mr. Iroegbulem argues that Section 1591(a) is not a "covered sex crime" for these purposes because it does not require an actual sex act to have occurred for conviction. R. 3 at 6. While true that Section 1591(a) does not require an actual sex act,[3] the comments to Section 4B1.5 specifically state that an offense perpetrated against a minor under Section 1591(a) is a covered sex crime. USSG § 4B1.5, comment (n.2); *see also United States v. Hull*, 2017 WL 6733689 (N.D. Ill. Dec. 17, 2017) (applying Section 4B1.5(b)(1) enhancement to Section 1591(a) conviction). Accordingly, counsel was not ineffective for failing to object on this basis.

**Double counting under Sections 4B1.5(b)(1) and 2G1.3(b)(4)(A).** Finally, Mr. Iroegbulem asserts that his counsel was ineffective for failing to object to the imposition of both the two-level Section 2G1.3(b)(4)(A) enhancement and the five-level Section 4B1.5(b)(1) enhancement, contending that each involved the same conduct and was therefore "double counted." R. 3 at 4.

But "double counting"—or "using the same conduct more than once to increase a defendant's guidelines sentencing range"—is "generally permissible unless the text of the guidelines expressly prohibits it." *United States v. Vizcarra*, 668 F.3d 516, 519 (7th Cir. 2012); *see also United States v. Cook*, 850 F.3d 328, 334 (7th Cir. 2017) (accord). There is no such prohibition here. In fact, as the Seventh Circuit has observed, Section 4B1.5(b)(1) "requires the adjusted offense level for repeat sex

---

[3] The Seventh Circuit has surmised that this is likely because Congress intended the statute to convict defendants who allowed a client or codefendant to engage in a sex act, not only defendants who personally caused the victim to do so. *United States v. Wearing*, 865 F.3d 553, 556 (7th Cir. 2017).

offenders to be '5 *plus* the offense level determined in Chapters Two and Three' (emphasis added); the word 'plus' reflects the Commission's intent that repeat offenders receive a 5-level enhancement 'in addition to' any calculations in Chapters Two and Three," which include Section 2G1.3(b)(4)(A). *United States v. Craig*, 420 Fed. App'x 605, 607 (7th Cir. 2011) (citing *United States v. Von Loh*, 417 F.3d 710, 713 (7th Cir. 2005)).

In any case, the conduct giving rise to the two enhancements was different. Whereas the Section 2G1.3(b)(4)(A) enhancement was based on Mr. Iroegbulem's having arranged for Minor B to engage in sex acts with customers, 15 CR 52-1, R. 108 ¶¶ 25-27 (PSR), the Section 4B1.5(b)(1) enhancement was imposed based on Mr. Iroegbulem having both personally engaged in sex acts with Minor B, and having also trafficked Minor B for an extended period, *Id.* ¶¶ 34-36.

Finally, it is worth noting that even if the Court had applied just the Section 4B1.5(b)(1) enhancement, the total offense level would have resulted in a guideline range of 292 to 365 months' imprisonment, the lower end of which is still 52 months higher than Mr. Iroegbulem's sentence. And if the Court had instead applied just the two-level enhancement set forth in Section 2G1.3(b)(4)(A), the 210 to 262-month guideline range would have encompassed the 240-month sentence issued here.

Mr. Iroegbulem thus cannot show prejudice from his counsel's conduct and his original Section 2255 petition is denied.

### III.    Supplemental Petition

As discussed, Mr. Iroegbulem's supplemental petition concerns his counsel's failure to challenge the constitutionality of the statute of conviction and indictment. The Government argues that it must be denied because it was not timely and does not relate back to his original petition, and it fails on the merits.

### A.    Timeliness

There is no dispute that Mr. Iroegbulem's August 30, 2019 supplemental petition was filed after the applicable one-year statute of limitations period expired on June 21, 2019 (one year after the deadline for filing his petition for writ of certiorari). *See* 28 U.S.C. § 2255(f)(1). As such, it is timely only if it relates back to the original motion. *Rodriguez v. United States,* 286 F.3d 972, 981 (7th Cir. 2002) (citing Fed. R. Civ. P. 15(c)). To relate back, the amendment must assert a claim "that arose out of the conduct, transaction, or occurrence set out" in the original motion. Fed. R. Civ. P. 15(c)(1)(B). But in a habeas case, it is not enough that the new claims arose out of the same "trial, conviction, or sentence;" and they do not relate back if "supported by facts that differ in both time and type from those the original pleading set forth." *Mayle v. Felix,* 545 U.S. 644, 656 (2005) (noting that relation back should be construed strictly in habeas cases).

The Sentencing Guidelines claims in Mr. Iroegbulem's original petition differ markedly from the claim in his supplemental petition that 18 U.S.C. § 1591(a) is unconstitutionally vague. R. 3 at 3-4; R. 11 at 5. The petitions thus stem from distinct

and non-overlapping sets of facts that differ in "both time and type." Mr. Iroegbulem offers no argument to the contrary. His supplemental petition is thus time-barred.

## B. Merits

Even if his supplemental petition had been timely, it is meritless. Generally, a statute must give people "fair notice of what the law demands of them." *United States v. Davis*, 139 S. Ct. 2319, 2325 (2019); *United States v. Biancofiori*, 2018 WL 372172, at \*1 (N.D. Ill. Jan. 11, 2018) ("A statute is not unconstitutionally vague if the 'commonsense meaning' of its terms is clear.") (citing *United States v. Powell,* 423 U.S. 87, 93 (1975)).

Section 1591(a) provides:

Whoever knowingly—

(1) in or affecting interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States, recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person; or

(2) benefits financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1),

knowing, or, except where the act constituting the violation of paragraph (1) is advertising, in reckless disregard of the fact, that means of force, threats of force, fraud, coercion described in subsection (e)(2), or any combination of such means will be used to cause the person to engage in a commercial sex act, or that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, shall be punished as provided in subsection (b).[4]

---

[4] 18 U.S.C. § 1591(b) in turn provides:

(1) if the offense was not effected by means of force, threats of force, fraud, or coercion described in subsection (e)(2), or by any combination of such means, or if the person recruited, enticed, harbored, transported, provided, obtained, advertised, patronized, or solicited had not attained

18 U.S.C. § 1591(a).

Mr. Iroegbulem does not argue that this language fails to provide notice of what Section 1591(a) prohibits. Nor could he; its proscriptions are clear. *See Biancofiori*, 2018 WL 372172, at *1 ("[n]othing in the way [Section 1591(a)] is worded" made it "impossible" for the defendant "to have conformed himself to the law.").

But Mr. Iroegbulem contends that it is ambiguous whether Section 1591(a) contemplates more than one offense through subsections (1) and (2), or whether those subsections simply represent alternative means of committing the same crime. If the former, Mr. Iroegbulem contends that his indictment is duplicitous because in charging him with conduct that satisfies both subsections, it impermissibly "join[s] two or more offenses in a single count." *United States v. Hughes*, 310 F.3d 557, 560 (7th Cir. 2002). Mr. Iroegbulem cites no Seventh Circuit decisions addressing the issue, and nor could the Court locate any.[5] But the Court need not address the question, because regardless of the answer, Mr. Iroegbulem can show no prejudice.

---

the age of 14 years at the time of such offense, by a fine under this title and imprisonment for any term of years not less than 15 or for life; or

(2) if the offense was not so effected, and the person recruited, enticed, harbored, transported, provided, obtained, advertised, patronized, or solicited had attained the age of 14 years but had not attained the age of 18 years at the time of such offense, by a fine under this title and imprisonment for not less than 10 years or for life.

[5] Mr. Iroegbulem does cite to *United States v. Cephus*, 684 F.3d 703 (7th Cir. 2012), which does concern Section 1591 in part, but that case only briefly discusses duplicity in a different context.

Indeed, if Section 1591(a)(1) and (2) represent alternative means of committing the same (single) crime as many courts have held,[6] Count Two is proper as charged. *See United States v. Berardi,* 675 F.2d 894, 897 (7th Cir.1982) (a count charging a single offense by multiple means is not duplicitous); *see also Paul*, 885 F.3d at 1104 ("Duplicity concerns are not present . . . when the underlying statute is one which merely enumerates one or more ways of committing a single offense," like Section 1591(a), in which case "all of the different ways of committing that same offense may be alleged in the conjunctive in one count, and proof of any one of the enumerated methods will sustain a conviction."); *Raniere*, 384 F. Supp. 3d at 321 (indictment not duplicitous where it alleged that defendant engaged in conduct outlined in both Section 1591(a)(1) and (2), which represent alternative means of committing the same crime); *see also Nyuon v. United States*, 2017 WL 1507450, at *7 (D.S.D. Apr. 27, 2017) ("Sex trafficking of a child under 18 U.S.C. § 1591 merely enumerates more than one way of committing the offense," and "does not raise duplicity concerns").

---

[6] *See United States v. Paul*, 885 F.3d 1099, 1104-05 (8th Cir. 2018), *cert. denied*, 139 S. Ct. 290 (2018) (Section 1591(a)(1) and (2) "are in fact alternative ways of committing a single offense—the defendant violates the statute if he knowingly 'recruits, entices [etc.]," or "benefits . . . from participation'"); *see also United States v. Corley*, 679 Fed. App'x 1, 5 (2d Cir. 2017) (construing Section 1591(a)(1) and (a)(2) as different means of committing the same crime); *United States v. Raniere*, 384 F. Supp. 3d 282, 321 (E.D.N.Y. 2019) (concluding that subsections (a)(1) and (a)(2) constitute different ways of committing the same crime); *United States v.* King, 713 F. Supp. 2d 1207, 1218 (D. Haw. 2010) ("Congress did not intend the subsections 1591(a)(1) and (a)(2) to create two separate offenses such that a defendant could be penalized multiple times for the same conduct but instead intended to provide two alternate means of committing the same offense.").

And even if Congress intended Section 1591(a) to delineate multiple crimes and thus Count Two *is* duplicitous, none of the dangers of duplicity—"that the defendant may not understand the charges against him, might be convicted by less than a unanimous jury, may be prejudiced by evidentiary rulings at trial, or may be subjected to double jeopardy"—are present. *United States v. Davis*, 471 F.3d 783, 790 (7th Cir. 2006). Indeed, Mr. Iroegbulem does not claim that he misunderstood the charges and does not challenge his plea or otherwise argue that he did not commit the charged conduct. And because there was no trial, there also were no jury or evidentiary issues. Finally, Mr. Iroegbulem was sentenced just once for the conduct charged in Count Two, and accordingly for just one Section 1591(a) violation.[7] Mr. Iroegbulem's claim and supplemental petition fail.[8]

---

[7] It is unclear whether Mr. Iroegbulem also argues that his counsel was ineffective for failing to challenge the indictment as multiplicitous. But multiplicity is the charging of a single offense in multiple counts of an indictment, *United States v. Allender*, 62 F.3d 909, 912 (7th Cir. 1995), and although Mr. Iroegbulem was indicted on three counts, he plead to just one. Nor were the original three counts multiplicitous in any case; each concerned a different victim. *See United States v. Snyder*, 189 F.3d 640, 647 (7th Cir. 1999) ("The Double Jeopardy Clause is not implicated when multiple separate violations of the same provision are charged in multiple counts.").

[8] Mr. Iroegbulem spends considerable time arguing that the Supreme Court's recent decision in *United States v. Davis*, 139 S. Ct. 2319 (2019) renders Section 1591(a) unconstitutionally vague. But *Davis* concerned 18 U.S.C. § 924(c), which threatens long prison sentences for the use of a firearm in connection with certain federal "crimes of violence," the definition for which the Supreme Court found was unconstitutionally vague. 139 S. Ct. at 2324. Mr. Iroegbulem fails to explain how it or the other Supreme Court cases he cites concern Section 1591(a) or otherwise bear any meaningful relation to this one. *See Rehaif v. United States*, 139 S. Ct. 2191 (2019) (construing 18 U.S.C. § 922(g) and § 924(a)(2) as requiring government to prove that defendant both knew he possessed a firearm, and that he knew he belonged to the category of persons barred from possessing it); *see also United States v. Haymond*, 139 S. Ct. 2369 (2019) (holding that statute governing revocation of

## IV. Evidentiary Hearing

In his reply brief to his initial petition, Mr. Iroegbulem argues that he is entitled to an evidentiary hearing to develop and demonstrate the validity of his claims. R. 7 at 3. But even setting aside his unexplained failure to request an evidentiary hearing sooner, no such evidentiary hearing is called for here. Mr. Iroegbulem's motion, the files, and the records in this case conclusively show that he is not entitled to Section 2255 relief. *See Long v. United States*, 847 F.3d 916, 920 (7th Cir. 2017) ("a district court need not grant an evidentiary heading if 'the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief' or 'if the petitioner makes allegations that are vague, conclusory, or palpably incredible, rather than detailed and specific'") (quoting *Martin v. United States*, 789 F.3d 703, 706 (7th Cir. 2015)). Accordingly, Mr. Iroegbulem's request is denied.

## V. Certificate of Appealability

Mr. Iroegbulem did not request a certificate of appealability. Under 28 U.S.C. § 2253(c)(2), a petitioner is entitled to one only if he can make a substantial showing of the denial of a constitutional right. *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003). A petitioner must demonstrate that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Id.* (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Mr. Iroegbulem

---

supervised release and authorizing a new mandatory minimum sentence based on a judge's fact finding was unconstitutional as applied).

has not made such a showing. Therefore, the Court declines to certify any issues for appeal under 28 U.S.C § 2253(c)(2).

## CONCLUSION

For these reasons, Mr. Iroegbulem's initial and supplemental Section 2255 petitions, R. 3 and R. 11, are denied, and the Court declines to issue a certificate of appealability.

ENTERED:

_____
Honorable Thomas M. Durkin
United States District Judge

Dated: April 24, 2020